UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR 13-10001-RAL |
| Plaintiff, | * | |
| vs. | * | |
| | * | OPINION AND ORDER |
| | * | DENYING MOTION FOR |
| | * | REVOCATION OF ORDER |
| RICARDO FIGUEROA TAPIA, | * | RELEASING DEFENDANT |
| a/k/a Carlos Rafael Ramos Jimenez, | * | |
| Defendant. | * | |

## I. INTRODUCTION

Defendant Ricardo Figueroa Tapia ("Figueroa Tapia") was arrested on December 17, 2012, based on a Complaint charging one count of Passport Fraud in violation of 18 U.S.C. § 1542. Doc. 1. On January 3, 2013, United States Magistrate Judge William D. Gerdes conducted a detention hearing under the Bail Reform Act, 18 U.S.C. § 3142. Doc. 14 at 1; Doc. 25. Judge Gerdes ordered Figueroa Tapia to be released subject to certain conditions. Doc. 14 at 2-5. The Government filed a Motion for Revocation of Order Releasing Defendant with this Court arguing that Figueroa Tapia is a flight risk. Doc. 13. Figueroa Tapia then was indicted on January 8, 2013. Doc. 20. Following his arraignment on January 15, 2013, Judge Gerdes ordered Figueroa Tapia to remain in the custody of the United States Marshal pending further court proceedings. Doc. 15; Doc. 31; Doc. 32.

## II. FACTS

Figueroa Tapia is alleged to have made a false statement in an application for a United States passport in violation of 18 U.S.C. § 1542. Doc. 1; Doc. 20. Figueroa Tapia, on August 12, 2012, allegedly

1

entered the United States Post Office in Watertown, South Dakota, presented a South Dakota identification card bearing the name Carlos Rafael Jiminez Ramos, provided a Puerto Rican birth certificate bearing the name Carlos Rafael Jiminez Ramos, and signed an application for a United States passport under the name of Carlos R. Jiminez Ramos. Doc. 1-1; Doc. 1-2. Figueroa Tapia and Carlos Rafael Jiminez Ramos appear to have been co-workers. Doc. 1-1; Doc. 1-2. Among the evidence collected in the investigation was a permanent resident card Figueroa Tapia had presented to an employer that allegedly was doctored; the card's identification number belonged to a Vietnamese immigrant who is now a United States citizen. Doc. 25 at 10.

Immigration and Customs Enforcement (ICE) Deportation Officer Casey Cody testified at Figueroa Tapia's detention hearing. Det. Hr'g. Tr. 4-5.[1] ICE has filed an Immigration Detainer on Figueroa Tapia. Doc. 14. Officer Cody stated that "if this Defendant were to be released from custody . . . I am to take him into administrative custody and place him into administrative removal proceedings." Det. Hr'g. Tr. 14.[2] Officer Cody has "no direction" from ICE to hold off removal proceedings for those persons with criminal charges by the Department of Justice pending against them. Det. Hr'g. Tr. 14. Officer Cody testified that Figueroa Tapia first would be sent to Sioux Falls, South Dakota, where a bond will be determined based off of his criminal and immigration history. Det. Hr'g. Tr. 6-7. If Figueroa Tapia posts bond, he would be released from ICE custody and his first removal hearing may not be held for up to six weeks. Det. Hr'g.

---

[1] This Opinion and Order uses "Det. Hr'g. Tr." followed by a page reference to refer to testimony in the transcript of the evidentiary detention hearing held on January 3, 2012.

[2] Officer Cody first explained that Figueroa Tapia would be placed into administrative removal proceedings "at the conclusion of the current criminal case." Doc. 25 at 5. Later on in his testimony Officer Cody stated that the administrative removal proceeding would begin upon Figueroa Tapia's release from custody. Doc. 25 at 14. The Government contends that upon release from the Marshals Service custody, ICE would take custody and begin removal proceedings. Doc. 35 at 2.

2

Tr. 6-9. However, if Figueroa Tapia is unable to post bond, he would be held in jail in Minnesota and removal proceedings could take as little as two weeks, or Figueroa Tapia may be allowed to depart the United States voluntarily. Det. Hr'g. Tr. 6-9.

Pretrial Services Officer Karla Chamberlain testified. Det. Hr'g. Tr. 18. Officer Chamberlain did not interview Figueroa Tapia, but did generate a pretrial services report. Det. Hr'g. Tr. 18-19. Officer Chamberlain noted that Figueroa Tapia has a "minimal criminal history." Det. Hr'g. Tr. 20. An ICE agent told Officer Chamberlain that Figueroa Tapia had lived in South Dakota since 2003, but she could not verify this information as she was unable to interview him. Det. Hr'g. Tr. 19-21. Officer Chamberlain was concerned about her ability to monitor Figueroa Tapia based on his use of false identification, refusal to concede his identity, and his ties to a foreign country, although the strength of any ties to another country was left unclear. Det. Hr'g. Tr. 20. Figueroa Tapia testified that he does not have money to travel to any foreign country and that he is unsure whether he still has a job. Det. Hr'g. Tr. 23. The Government stipulated that Figueroa Tapia has lived and worked in South Dakota since about 2003, that his children are citizens, and that he has been involved in the community and his children's school. Det. Hr'g. Tr. 24.

Although Figueroa Tapia did not concede his real identity and did not undertake a pretrial services interview, Judge Gerdes concluded that he could be "released with a combination of conditions to assure his appearance at future hearings." Doc. 14 at 1. Judge Gerdes noted that the "critical issue . . . is whether this Court should detain Defendant because the Immigration and Customs Enforcement Office has filed a Detainer on Defendant and may start deportation proceedings." Doc. 14 at 2. Judge Gerdes adopted the reasoning of similar cases from district courts in this region and held that the Government had not met its burden of establishing that Figueroa Tapia needed to be detained as an unreasonable flight risk. Doc. 14 at 2; see also United States v. Villanueva-Martinez, 707 F.Supp.2d 855, 856 (N.D. Iowa 2010); United

3

States v. Montoya-Vasquez, No. 4:08CR3174, 2009 WL 103596, at *5 (D. Neb. Jan. 13, 2009).

Figueroa Tapia then was transferred from the custody of the U.S. Marshal to ICE custody in Minnesota. See Doc. 27 (indicating defendant was in the custody of ICE after detention hearing). Figueroa Tapia was transferred back to United States Marshal custody from ICE detention in Minnesota to be arraigned on January 15, 2013. Doc. 27. As part of the arraignment, Judge Gerdes ordered Figueroa Tapia to be detained following his arraignment "until the conclusion of all proceedings in this matter or further order of this Court." Doc. 27.

Prior to Judge Gerdes' detention order, the Government had filed a Motion for Revocation Releasing Defendant. Doc. 13. The Government argued that Judge Gerdes erred in determining that Figueroa Tapia is not a flight risk and that he could be released with certain conditions. The Government also argued that release subject to conditions cannot reasonably assure his reappearance because of Figueroa Tapia's refusal to identify himself, the absence of a pretrial services interview, his alleged Mexican citizenship, his "apparent ability to travel to Mexico," and the presence of an ICE detainer. Doc. 35 at 3-6. Figueroa Tapia resisted the Government's Motion arguing that he is not a flight risk and that an ICE detainer alone does not merit detention. Doc. 18. After Judge Gerdes granted the Writ of Habeas Corpus Ad Prosequendum, Doc. 27, bringing Figueroa Tapia back into United States Marshal custody, Figueroa Tapia filed an Objection and Motion to Vacate Writ of Habeas Corpus Ad Prosequendum asking for the Defendant's release from detention based on Judge Gerdes' detention order following the arraignment. Doc. 31. The Government resisted Figueroa Tapia's Motion to Vacate Writ of Habeas Corpus Ad Prosequendum and requests his continued detention. The conduct of the parties, in briefing the Government's motion even following issuance of the writ, reveals that they do not believe issuance of the writ by Judge Gerdes to have rendered moot the Government's motion or the question of whether

Figueroa Tapia is entitled to pretrial release.

## III. DISCUSSION

The Bail Reform Act provides that a "judicial officer shall order the pretrial release of the person. . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). The Bail Reform Act favors the pretrial release of defendants. Villanueva-Martinez, 707 F.Supp.2d at 856; United States v. Chavez-Rivas, 536 F.Supp.2d 962, 965 (E.D. Wis. 2008) ("The court may deny release only if no conditions will reasonably assure (1) the defendant's appearance and (2) the safety of the community . . . and should resolve doubts . . . in the defendant's favor."). A district court reviews a magistrate judge's order for release *de novo*. United States v. Adipietro, 773 F.Supp. 1270, 1271 (W.D. Mo. 1991) (citing United States v. Maull, 773 F.2d 1479, 1481 (8th Cir.1985)).

Here, no presumption of detention applies under 18 U.S.C. § 3142(e)(2), and the Government is not arguing that Figueroa Tapia is a danger to the community. The Government contends that Figueroa Tapia is a flight risk and that no set of conditions exist that would "reasonably assure" his appearance. Doc. 35 at 3. The Government bears the burden of proving by a preponderance of the evidence that there is no condition or combination of conditions to "reasonably assure" the defendant's appearance in the future. 18 U.S.C. § 3142(c)(1); United States v. Ramirez-Hernandez, Nos. CR-12-4111, CR-12-4102, CR-12-3053, 2012 WL 6715984, at *1 (N.D. Iowa Dec. 19, 2012). The Bail Reform Act lists the four factors a court should consider when determining if conditions exist to reasonably ensure a defendant's appearance: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the danger the defendant poses to any person or the community upon his release. 18 U.S.C. § 3142(g).

The Government argues that Figueroa Tapia's case is similar to United States v. Mehmood, 358 F.App'x 767 (8th Cir. 2010), in which the United States Court of Appeals for the Eighth Circuit upheld a district court's pretrial detention order. Id. at 769. In Mehmood, the defendant was a native of Pakistan and permanent resident of the United States. Id. The defendant, charged with multiple violations, had used two separate aliases to apply for two separate social security cards. Id. He also possessed a Canadian social security card, maintained unreported bank accounts and property in Canada, and was a frequent international traveler. Id. The Eighth Circuit upheld the district court's determination that the defendant was a flight risk and that there was no condition or set of conditions which could reasonably assure his attendance at trial. Id.

Applying the facts and circumstances surrounding Figueroa Tapia to the Bail Reform Act's four factors, this Court agrees with Judge Gerdes that the Government did not meet its burden at the January 3, 2012 hearing to show that Figueroa Tapia is a flight risk and that no set of conditions exist to reasonably assure his appearance at trial. Figueroa Tapia is presumed innocent, even though he is charged with having unsuccessfully used a former co-worker's identification documents to obtain a United States passport. Unlike Mehmood, where the defendant faced multiple fraud and immigration violations and had employed multiple aliases in attempts to obtain multiple social security cards, Figueroa Tapia faces a single charge and appears to have a minimal criminal history. Figueroa Tapia has lived and worked in South Dakota for approximately nine years, he has children who are United States citizens living in South Dakota, and he testified that he has no money to leave the jurisdiction. In contrast to Mehmood, the Government did not present evidence of Figueroa Tapia's ties to another country or proclivity for international travel.

The Government also claimed that Figueroa Tapia is a flight risk, in part, because of an ICE detainer that has been placed on him. Although a defendant's immigration history is relevant to a risk of

flight analysis under the history and characteristics factor, evidence of an ICE detainer alone does not merit detention under the Bail Reform Act. See e.g., United States v. Barrera-Omana, 638 F.Supp.2d 1108, 1112 (D. Minn. 2009) ("While the defendant's illegal status must be considered, the mere presence of an ICE detainer is not a determining detention factor."). Many courts refuse to consider, or give little weight to, evidence of an ICE detainer under the risk-of-flight and nonappearance analysis because the ICE removal process based on a detainer can be unpredictable. Montoya-Vasquez, 2009 WL 103596, at *5 ("I conclude that the risk of removal by ICE, if cognizable at all under the Act, cannot be determinative of the question of a defendant's eligibility for release."); Villanueva-Martinez, 707 F.Supp.2d at 858 (N.D. Iowa 2010) ("The court will not speculate on the possible results of pending immigration proceedings involving the defendant. Accordingly, based on the factors enumerated in the Bail Reform Act, the court finds the Government has failed to prove by a preponderance of the evidence that there are no conditions of release that will reasonably assure the defendant's appearance as required."); United States v. Campos, No. CR. 2:10-MJ-6, 2010 WL 454903, at *4-5 (M.D. Ala. Feb. 10, 2010) (noting that the prospect of removal is not irrelevant and detaining defendant to prevent his certain removal, but stating "courts have correctly declined to order detention where the outcome of immigration proceedings was speculative"); cf. United States v. Lozano-Miranda, No. 09-CR-20005, 2009 WL 113407, at *3 (D. Kan. Jan. 15, 2009) (noting that the "defendant's status as a deportable alien alone does not mandate detention, it is a factor which weighs heavily in the risk of flight analysis," but concluding that defendant was subject to pretrial release); United States v. Ong, 762 F.Supp.2d. 1353, 1363 (N.D. Ga. 201) (finding the reasoning from Lozano-Miranda, 2009 WL 113407, at *3, more persuasive than cases disregarding ICE detainers, but also holding that detention would be warranted even if ICE detainer did not exist). Congress contemplated that undocumented or illegal aliens would be given detention hearings under the Bail Reform Act. See 18

U.S.C. § 3142 (d) (outlining procedures for temporary detention of an illegal alien and directing court to notify immigration authorities). Yet, Congress has not instructed courts to detain individuals based on the existence of an ICE detainer. Barrera-Omana, 638 F.Supp.2d at 1110 (holding that pretrial detention based on ICE detainer alone undermines "Congress's carefully crafted detention plan" outlined in the Bail Reform Act and raises Constitutional concerns); United States v. Adomako, 150 F.Supp.2d 1302, 1304 (M.D. Fla. 2001) ("Congress chose not to exclude deportable aliens from consideration for release or detention in criminal proceedings."). As one court has detailed, this is a situation where one arm of the Executive, wishing to prosecute this defendant criminally, is arguing that he is likely to flee based on the possible actions of a different arm of the same Executive:

> The problem here is not that defendant will absent himself from the jurisdiction, but that two Article II agencies will not coordinate their respective efforts. The Executive, in the person of the Attorney General, wishes to prosecute defendant. The same Executive, in the person of the Assistant Secretary of Homeland Security for ICE, may want to deport him. It is not appropriate for an Article III judge to resolve Executive Branch turf battles. The Constitution empowers this Court to apply the will of Congress upon a criminal defendant on a personal and individualized basis. This Court ought not run interference for the prosecuting arm of the government.

Barrera-Omana, 638 F.Supp.2d at 1111-12.

Here, the Government has not carried its burden to show by a preponderance of the evidence that Figueroa Tapia is a flight risk and that no conditions of confinement exist to reasonably assure his appearance. Figueroa Tapia has been in his community in South Dakota for nine years and is involved at his children's school. Based on the four factors outlined in the Bail Reform Act and this Court's independent review, Judge Gerdes was correct in finding that Figueroa Tapia was not a flight risk and that a set of conditions could reasonably assure his appearance for trial.

After having decided that Figueroa Tapia was entitled to be released under the Bail Reform Act and

after Figueroa Tapia was then taken into ICE custody, Judge Gerdes issued a Writ of Habeas Corpus Ad Prosequendum, Doc. 27, to require ICE's release of Figueroa Tapia to the United States Marshal for purposes of his arraignment in Aberdeen, South Dakota, in this case. The writ issued by Judge Gerdes required that Figueroa Tapia be held by the United States Marshal "until the conclusion of all proceedings in this matter or further order of this Court." Doc. 27. At the time Judge Gerdes issued the writ, he was aware that the Government had appealed his decision not to detain Figueroa Tapia under the Bail Reform Act. Figueroa Tapia has filed a Motion to Vacate Writ of Habeas Corpus Ad Prosequendum. Doc. 31. This Court cannot determine based on the status of the record whether Judge Gerdes meant for Figueroa Tapia to be held pending this Court's decision of the appeal or simply for the arraignment or throughout the pendency of the case based on developments occurring after the January 3, 2013 hearing. Thus, this Court refers to Judge Gerdes the Defendant's motion to vacate the writ.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the Government's Motion for Revocation of Order Releasing Defendant, Doc. 13, is denied. It is further

ORDERED that the Defendant's Motion to Vacate Writ of Habeas Corpus Ad Prosequendum, Doc. 31, is referred to Magistrate Judge William D. Gerdes for initial determination.

Dated February 12th, 2013.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE